UNITED STATE DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

KELLY C. MOQUIN          :
*Plaintiff*              :
                         :
    v.                   :     C.A. No.: 1:20-cv-433
                         :
UNITED STATES OF AMERICA :
*Defendant*              :

## COMPLAINT

Plaintiff appearing through her undersigned counsel allege as follows:

## PARTIES

1.     Plaintiff Kelly C. Moquin resides in East Providence, Rhode Island.

2.     Defendant United States of America is being sued for the negligent or wrongful acts and omissions described herein of its employees East Bay Community Action Program and/or Thomas E. Guttmacher, M.D. while acting within the scope of its/his office or employment, under circumstances where the United States, if a private person, would be liable in accordance with the law of the place where the act or omission occurred.  East Bay Community Action Program is a Rhode Island non-profit corporation with a principal place of business located in Newport, Rhode Island and, at all times relevant hereto, was an entity deemed employed by the Public Health Service under the Federally Supported Health Centers Assistance Act ("FSHCAA"), 42 U.S.C. § 233(g)-(n).  Thomas E. Guttmacher, M.D. was, at all times relevant hereto, a physician licensed to practice medicine in the State of Rhode Island who held himself out as a specialist in family medicine and was a Public Health Service employee for purposes of 42 U.S.C. § 233.

## JURISDICTION AND VENUE

3. On or about March 16, 2020 Plaintiff presented a claim for money damages to the appropriate Federal agency, to wit the United States Department of Health and Human Services, in accordance with the provisions of 28 U.S.C. § 2675.

4. On or about April 20, 2020 the United States Department of Health and Human Services acknowledged receipt of Plaintiff's claim for money damages as aforesaid.

5. At least six (6) months have elapsed since Plaintiff presented her claim for money damages as aforesaid and the United States Department of Health and Human Services has failed to make a disposition of said claim. Pursuant to 28 U.S.C. § 2671, *et seq.*, the agency's inaction in this regard is deemed a final denial of Plaintiff's aforesaid claim.

6. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 in that this action arises under the laws of the United States of America and is premised on the acts and omissions of the Defendant acting under color of federal law. This Court further has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1346(b) in that this is a claim against the Defendant United States of America, for money damages, accruing on or after January 1, 1945, for personal injury caused by the negligent and wrongful acts and omissions of employees of the Government while acting within the course and scope of their office or employment, under the circumstances where the Defendant, if a private person, would be liable to the Plaintiff.

7. Jurisdiction founded upon the federal law is proper in that this action is premised upon federal causes of action under the Federal Tort Claims Act (hereinafter "FTCA"), 28 U.S.C. § 2671, *et. seq.*

8.     Venue is proper in the United States District Court for the District of Rhode Island pursuant to 28 U.S.C § 1391 in that one or more defendants reside in Rhode Island and/or a substantial part of the events or omissions giving rise to the claim occurred in Rhode Island

**FACTS**

9.     On or about September 27, 2018 Plaintiff presented to Thomas E. Guttmacher, M.D. at the East Bay Community Action Program clinic with a history of fibromyalgia with complaints of musculoskeletal pain in both ankles including joint tenderness, nocturnal awakening, nocturnal pain, numbness and tingling in the legs.  The exam did not document a neurological exam and included only 14 of 18 total tender points in her connective tissue.  Plaintiff was diagnosed with fibromyalgia and arthralgia of multiple joints and started on gabapentin.  She was re-evaluated by Thomas E. Guttmacher, M.D. on November 5, 2018 with a new complaint of low back pain beginning 6 weeks ago with pain radiating into the right foot greater than 50% of the time with symptoms aggravated by walking.  Plaintiff was also again noted to have tingling in the legs and weakness.  On exam she was noted to have positive straight leg raise on the right and painful lumbar range of motion and 8 of 18 points tender but again no neurologic exam of motor/sensory function was documented.  Plaintiff was diagnosed with lumbar radiculopathy and an MRI of the lumbar spine was ordered along with follow up in 6 weeks as well as gabapentin dose increased.

10.  On or about November 16, 2018 Plaintiff underwent an MRI of the lumbar spine at Rhode Island Medical Imaging which showed an L5-S1 large central disc extrusion resulting in severe spinal stenosis with mass effect on the right side greater than the left transiting the S1 nerve roots as well.  The MRI report was faxed to Thomas E. Guttmacher, M.D. same day (i.e.

3

November 16, 2018) at 4:15:48 p.m. and electronically signed by Thomas E. Guttmacher, M.D. same day at 5:30:03 p.m.

      11.      On December 26, 2018 Plaintiff was seen by Thomas E. Guttmacher, M.D. who noted that the patient was very uncomfortable due to lumbar radiculopathy and norco helped a little with sleep and gabapentin 600mg thrice daily not doing much.  Plaintiff denied loss of bowel/bladder control/leg weakness.  Plaintiff reported severe low back pain radiating to the left foot and an appointment with the spine center was made for January 3, 2019.  There was no neurologic exam noted during the December 26, 2018 visit but exam documented straight leg raise positive on the left now and lumbar range of motion moderately reduced due to pain which the patient rated 10/10 for the first time.  Plaintiff was diagnosed with lumbar stenosis with neurogenic claudication and instructed to call spine center to be put on the cancellation list and gabapentin dose increased as well as additional Norco provided.  There was no indication in the patient's chart that Thomas E. Guttmacher, M.D. had reviewed the November 16, 2018 MRI results.

      12.      On January 10, 2019 Plaintiff presented to Rhode Island Hospital in the late afternoon with signs and symptoms of cauda equina syndrome beginning 4 days earlier. Specifically, she complained of losing urinary control as well as bilateral LE numbness and inability to urinate nor sensation of urinating nor stooling.  Plaintiff also complained of heaviness in her leg as well as worsening LE pain and difficulty walking due to the pain. She underwent a straight catheterization for 1100 ml of residual urine.  It was noted that Plaintiff had 4/5 L5 pattern motor function with intact sensation bilateral legs and MRI shows L5-S1 disc herniation again occluding the canal and planned for AM surgery.  Plaintiff was taken for urgent L5-S1

laminectomy and discectomy on 1/11/19.  Plaintiff was discharged on January 12, 2019 with improved control of bowel/bladder symptoms and pain.

13.     On January 17, 2019 Plaintiff returned to Rhode Island Hospital in the late afternoon with complaints of recurrent urinary incontinence and perineal numbness with a PVR >1000cc urine.  Repeat MRI of the lumbar spine demonstrated re-herniation at L5-S1 causing severe stenosis.  Plaintiff was taken to the operating room on January 18, 2019 for re-do of the L5-S1 laminectomy with discectomy and durotomy repair.  Plaintiff was discharged on January 19, 2019 after being cleared by physical therapy.

14.     On January 28, 2019 Plaintiff was re-evaluated by Thomas E. Guttmacher, M.D. and noted to have undergone surgery on January 11, 2019 and had 2nd surgery on January 18, 2019 and she complained of numbness in the girdle area and nocturnal incontinence.  On exam the patient's pain was noted 7/10 with no neurologic exam noted and plan was to follow up with her spine surgeon.  Plaintiff continued to be followed until August 8, 2019 with complaints of urinary dysfunction.

15.     On January 30, 2019 Plaintiff was seen at Brown Urology where she was noted to have no sensation of urination nor urge and now was having difficulty defecating and noted to have high residual urine capacity.  Plaintiff was instructed how to perform intermittent catheterization at this visit.  Plaintiff was re-evaluated on August 27, 2019 where it was documented that she was having incontinence and frequency but no longer caths herself.  Plaintiff was improving but unable to tolerate side effects of medical therapy which was adjusted.  Plaintiff was also seen there multiple other times with similar findings and recommendations.

16. Plaintiff was followed at the spine center for pain management postoperatively on February 28, 2019 where it was noted she was still straight catheterizing with persistent groin numbness. Plaintiff continued to wean from Oxycontin and continued physical therapy and gabapentin per doctor's recommendations. Plaintiff underwent an MRI lumbar spine in June 2019 and it was noted that she continued pelvic floor physical therapy and no longer needed to straight cath. The MRI by report showed focal contrast enhancement within the thecal sac which could be early arachnoiditis without stenosis and expected postop changes.

17. On or about July 23, 2019 Plaintiff was seen at Brown University orthopedics who noted she had persistent left lower extremity radiculopathy and paresthesia nonresponsive to medications. On exam she was noted to have normal motor function with decreased sensation in left L5-S1 distribution. Plaintiff was recommended to continue PT and take naproxen.

## COUNT I

### (Negligence - Liability of Defendant United States of America)

18. Plaintiff repeats and re-alleges paragraphs 1 through 17 with the same force and effect as if set forth in full herein.

19. Beginning on September 27 2018, and thereafter, Thomas E. Guttmacher, M.D. undertook, for good and valuable consideration, to provide medical care and treatment to Plaintiff Kelly C. Moquin.

20. At all times relevant hereto, Thomas E. Guttmacher, M.D. was an employee and/or actual or apparent agent of Defendant United States of America, East Bay Community Action Program, and/or was otherwise a Public Health Service employee for purposes of 42 U.S.C. § 233., acting within the scope thereof.

21. At all times relevant hereto, Thomas E. Guttmacher, M.D. had a duty to Plaintiff to conform to the standard of care exercised by the average physician holding himself out as a specialist in family medicine.

22. Nevertheless, Thomas E. Guttmacher, M.D. breached his duty in that he negligently provided medical care and treatment to Plaintiff.  Amongst other things,

- Plaintiff was demonstrating clinical and radiographic evidence of severe spinal stenosis and corresponding neurologic symptoms warranting urgent surgical intervention as of the MRI of November 16, 2018 as well as of the time of the office visit with Thomas E. Guttmacher, M.D. on December 26, 2018.
- Thomas E. Guttmacher, M.D. did not appropriately recognize and/or respond to the severity of Plaintiff's disease process during that timeframe.  For example, Thomas E. Guttmacher, M.D. did not notify Plaintiff of her condition for nearly 30 days after the November 16, 2018MRI of her lumbar spine was completed. Furthermore, Thomas E. Guttmacher, M.D. made little if any effort to have Plaintiff seen by an orthopedic surgeon or a neurosurgeon for another 30 days after that.  Thomas E. Guttmacher, M.D.'s evaluation of Plaintiff was below the standard of care as well in that his history only discussed some tingling in the patient's legs. There was no indication from the record that he ever discussed or warned the patient about the development of incontinence or other signs and symptoms that may occur with her disorder.
- Thomas E. Guttmacher, M.D.'s clinical examination was also below the standard of care in that there is no evidence in the record that even a rudimentary neurological examination was performed.

- Even if Thomas E. Guttmacher, M.D. had appropriately recognized the severity of Plaintiff's condition between the time that he received the November 16, 2018 MRI report (which the record reflects he had in his possession the same day that it was performed) and when he saw her on December 26, 2018, he, nevertheless, allowed another 30 days to pass before an appointment was made with the specialist/surgeon. The record does not reflect any instruction by Thomas E. Guttmacher, M.D. to the patient of the need for emergency room visitation should the patient have worsening of her symptoms which of course she clearly did.

- Had Plaintiff been referred to the emergency room or, at a minimum, for urgent spinal surgery evaluation within days of Thomas E. Guttmacher, M.D. receiving/reviewing the November 16, 2018 MRI report or, at the very latest when he saw the patient on December 26, 2018, more likely than not, she would have undergone urgent surgical treatment which would have avoided the difficulties that she continues to experience to this day inclusive of permanent radicular and bladder/bowel problems.

23. As a direct and proximate result of Thomas E. Guttmacher, M.D.'s negligence as aforesaid Plaintiff suffered severe and permanent personal injuries, experienced great pain and suffering of body and mind and experienced a loss of earnings and earning capacity all of which will continue into the future.

WHEREFORE, Plaintiff Kelly C. Moquin demands an award of damages against Defendant United States of America, plus interest, costs and such further relief as this court deems just and reasonable.

## COUNT II

**(Informed Consent - Liability of Defendant United States of America)**

24. Plaintiff repeats and re-alleges paragraphs 1 through 23 with the same force and effect as if set forth in full herein.

25. Beginning on September 27 2018, and thereafter, Thomas E. Guttmacher, M.D. undertook, for good and valuable consideration, to provide medical care and treatment to Plaintiff Kelly C. Moquin.

26. At all times relevant hereto, Thomas E. Guttmacher, M.D. had a duty to Plaintiff to inform her of the various medical care options available to her and the risks and benefits of those options and the course of care he was providing.

27. Nevertheless, Thomas E. Guttmacher, M.D. breached his duty in that he failed to inform Plaintiff of the various medical care options available to her and the risks and benefits of those options and the course of care he was providing.

28. Had Plaintiff been informed of the undisclosed risks of the course of medical care that Thomas E. Guttmacher, M.D. was providing she would have chosen different care, thereby avoiding injury.

29. As a direct and proximate result of Thomas E. Guttmacher, M.D.'s failure to so inform Plaintiff, she suffered severe and permanent personal injuries, experienced great pain and suffering of body and mind, experienced a loss of earnings and earning capacity all of which will continue into the future

WHEREFORE, Plaintiff Kelly C. Moquin demands an award of damages against Defendant United States of America, plus interest, costs and such further relief as this court deems just and reasonable.

        Plaintiff,
        By her Attorney,

        /s/ Michael J. Stevenson_____
        Michael J. Stevenson, Esq. (#6642)
        Rob Levine & Associates
        544 Douglas Avenue
        Providence, RI  02908
        (401) 621-7000 Ext. 167
        (401) 854-1856 (fax)
        mstevenson@roblevine.com

Dated:  October 7, 2020